

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,        )
                              )
      Plaintiff-Respondent,    )
                              )
vs.                          )        No. SD32615
                              )
DALE S. OLTEN, SR.,       )        **Filed:  April 30, 2014**
                              )
      Defendant-Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable William E. Hickle, Circuit Judge

### AFFIRMED

A jury found Dale S. Olten, Sr. ("Defendant") guilty of burglary in the second degree, and the trial court sentenced him to imprisonment for fifteen years.  Defendant appeals and contends that (1) the trial court erred in admitting evidence, and (2) the evidence was insufficient to support the jury's verdict.  We deny both points and affirm the trial court's judgment.

Defendant was charged in Cole County with burglary in the second degree.  The burglary was alleged to have occurred on February 27, 2009.  At Defendant's request, venue was transferred to Phelps County.

1

At a pretrial hearing on March 1, 2013, the trial court denied Defendant's motion in limine that requested the exclusion from evidence of Defendant's statement in a recorded telephone call that Defendant placed from Cole County Jail on March 5, 2009.

The evidence admitted at trial included: In the morning on February 27, 2009, Cecil Roark was hunting coyotes near Eugene in Cole County. Roark observed a vehicle at a "farmhouse" that he believed was unoccupied. Roark drove past the farmhouse and then came back and observed "someone in the house." Roark called a friend who came to the farmhouse, and also called law enforcement. Roark heard "a noise, and the back door, something had broke out," and then Roark and his friend each observed a different individual running from the house. Clark Legg, Roark's friend, observed "[a]lmost immediately two -- two people r[un] out of the house and r[un] out back to this woods that you see behind the house and jumped the fence."

Mark W. Bax was a newspaper "route carrier" on February 27, 2009. In the late afternoon or early evening on that day, Bax became aware that law enforcement was "looking for people in [the] area." Bax subsequently noticed a "young man" that Bax did not recognize walking toward the door of a house. Bax continued to the next house on his newspaper route, and then turned around to retrace his path and continue his route. After he turned around, Bax noticed the young man "walking down the road" toward Bax. Bax asked the young man "who he was," and the man replied that "I'm looking for a way to get out of here, I'm lost." About that time, Bax noticed "two other [men] up hiding behind some cedar trees" about "50 to 75 feet" away. Bax "got a look at all three of them. Got a good real look at the two younger ones. The older one, I just got a real

good glimpse -- I got a decent look at him across the fence and then he took off down through the timber." Bax then called 911.

The young man Bax was talking with resumed walking down the road and the "other two joined him." Bax turned around and followed the three people down the road until "they jumped across the fence and went down through the timber." When the three men crossed the fence, they were about 40 to 50 feet away from Bax. Bax got a "glance" at the face of the older man when "[h]e looked back" as he was crossing the fence. A "few days" later, Bax identified a picture in a six-person "photo lineup" as a picture of the "older one" he observed "crossing the fence" on February 27, 2009. Bax used a "process of elimination" in selecting the picture. At trial, Bax identified Defendant as that same person although Bax acknowledged on cross examination that he was "hesitant" because "[i]t's been a long time"

The Chief Detective with the Cole County Sheriff's Department told the jury that he was dispatched to a residence in Cole County in response to a report of a "burglary in progress." When he arrived at the residence, several deputies from Miller County and citizens were present, a door of the residence had been "kicked in," a window of the residence had been "broken out," property had been collected from "throughout the residence" and "piled up in the living room right by the front door," and the burglars were gone. However, no property actually was taken from the residence. The residence is close to where Bax encountered the three men he reported to law enforcement. Later that day, law enforcement located Jesse Patterson "hiding under a brush pile" behind a nearby barn. The car found at the residence was registered to Patterson's wife, and driver

licenses found in the car belonged to Patterson and Defendant's son, Dale Olten, Jr. ("Junior").

Jesse Patterson testified as follows: In February 2009, Patterson had known Defendant for a "[c]ouple months." In February 2009, Patterson was unemployed and "stole things." On February 27, 2009, Patterson got up and "went and met" Junior. Patterson and Junior then burglarized "a few houses . . . in Miller County." Patterson and Junior drove Patterson's car to the houses. After the burglaries in Miller County, Patterson and Junior stopped by Defendant's house and "dropped some stuff off there." Patterson and Junior told Defendant where they had been that morning and where the items in Patterson's car came from. Defendant then went with Patterson and Junior to "burglariz[e]" the house where they "got caught." Patterson, Junior, and Defendant arrived at the house around noon and parked in front of the house. Defendant and Junior walked to the door while Patterson kept a lookout from the car. Defendant "kicked the door," and Patterson "got out of the car and followed . . . them in."

In the course of the burglary, Patterson noticed that two vehicles had arrived at the house. At that point, Defendant, Patterson, and Junior left the house through a bathroom window in that order. The three men then ran together into the woods. Later, Junior approached a house to ask directions and, after a car "pulled up asking us if we were the people that the cops were looking for . . ., we all split [up]." Later, law enforcement located Patterson "in a thicket of trees behind [a] barn" and arrested him. When Patterson was interviewed by law enforcement, he first "tried to lie my way out of it," but later "started telling them the real truth." After denying on more than one occasion that Defendant was with him, Patterson eventually told law enforcement about

4

Defendant's involvement in the burglary because he felt the "whole truth" might gain the court's leniency. For the "whole truth," the State agreed to recommend five years supervised probation for the burglary at issue in this case. Patterson actually received a suspended imposition of sentence and three years probation for this burglary and an earlier burglary in January 2009. Patterson also had criminal convictions for receiving stolen property and theft of gas.

On March 5, 2009, Defendant placed a telephone call to a female from the Cole County Jail. The call was recorded, and a portion of the recording was played for the jury over defense counsel's objection that the recording was "evidence of other crimes."[1] Because the jury was unable to hear the partial recording when it was played the first and second time, the recording was played a third time. Defense counsel lodged no objection to the procedure used in playing the partial recording, and replied "[u]h-huh" to the prosecutor's question if it was okay to use the prosecutor's laptop to play the partial recording the third time. In the portion of the recording played for the jury, Defendant appears to state: "Oh please, the thief is [expletive] Jesse. Now I just happen to [expletive] hold the [expletive]. Whatever. Never mind."[2] This evidence was not mentioned to the jury in opening statements, in closing arguments or at any other point in the trial.

Defendant did not present any evidence.

---

[1] Defendant renewed this objection in his motion for judgment notwithstanding the verdict or new trial.

[2] The portion of the recording played for the jury and deposited with us is difficult to understand clearly.

The trial court denied Defendant's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence.[3] After less than forty-five minutes of deliberation, the jury returned a verdict finding Defendant guilty of burglary in the second degree. The trial court sentenced Defendant to imprisonment in the Department of Corrections for fifteen years.

In his first point, Defendant claims that the trial court erred in admitting a portion of a recorded telephone conversation in which Defendant appears to state "the thief is [expletive] Jesse. Now I just happen to [expletive] hold the [expletive]" because the statement "amounted to prior bad acts for the purpose of showing propensity." We deny Defendant's first point because Defendant fails to show the admission of the statement prejudiced him as the statement was not highlighted and was cumulative of other evidence admitted without objection.

We review a trial court's decision to admit evidence as follows:

> A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.

*State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (internal footnotes and quotations omitted). The defendant has the burden to show prejudice. *State v. Morgenroth*, 227 S.W.3d 517, 523 (Mo. App. S.D. 2007).

---

[3] Again, Defendant renewed the claim in these motions that the evidence was insufficient to support a guilty verdict in his motion for judgment notwithstanding the verdict or new trial.

In evaluating whether trial court error was prejudicial, we consider the whole record and do not view the evidence in the light most favorable to the judgment. *State v. Foster*, 244 S.W.3d 800, 804 (Mo. App. S.D. 2008); *State v. Tabor*, 219 S.W.3d 769, 772-73 (Mo. App. S.D. 2007). A finding of prejudice requires "'that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence.'" *State v. Blakey*, 203 S.W.3d 806, 814 (Mo. App. S.D. 2006) (quoting *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001)). Finally, "[e]rror may be harmless if other evidence of guilt is overwhelming, or if the improper evidence was cumulative and not highlighted." *Foster*, 244 S.W.3d at 803.

Patterson, Defendant's accomplice, testified without objection that after the burglaries in Miller County on February 27, 2009, Patterson and Defendant's son, Junior, stopped by Defendant's house and "dropped some stuff off there." Patterson and Junior told Defendant where they had been that morning and where the items in Patterson's car came from. Defendant then went with Patterson and Junior to "burglariz[e]" the house where they "got caught." This testimony supported a reasonable inference that Defendant was a fence for Patterson, and rendered Defendant's similar statement in the recorded telephone conversation cumulative. Further, the recorded statement was brought to the jury's attention on a single occasion, and was not mentioned to the jury in opening statements, in closing arguments or at any other point in the trial.[4]

---

[4] Defendant belatedly complains that the recording was played more than once, but the transcript indicates that the jury heard the recording only once when, with defense counsel's approval, the prosecutor played the recording on his laptop in his third attempt to play the recording in a manner that permitted it to be heard by the jury.

In these circumstances, assuming, arguendo, that Defendant's statement was admitted improperly, Defendant fails to show there is a reasonable probability the error affected the outcome of the trial. Defendant's first point is denied.

In his second point, Defendant asserts that "the evidence was insufficient to support" the jury's verdict in that (1) Patterson's "testimony was patently unbelievable and insufficient to support the allegation that [Defendant] was present during the burglary," and (2) Bax's "identification of [Defendant] as the third suspected burglar was tainted and unreliable." We deny Defendant's second point because Defendant's arguments ignore our standard of review.

Our Supreme Court has described our standard of review as follows:

> In reviewing the sufficiency of evidence, this Court limits its determination to whether a reasonable juror could have found guilt beyond a reasonable doubt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). In so doing, the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict. Id. As such, this Court will not weigh the evidence anew since "the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002).

*State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008).

As instructed by the trial court, Defendant was guilty of burglary in the second degree if the jury believed beyond a reasonable doubt that "[D]efendant or other persons knowingly entered unlawfully" the house in question "for the purpose of committing the crime of stealing therein," and that Defendant "acted together with or aided in committing" the burglary "with the purpose of promoting or furthering the commission" of the burglary. Patterson testified that Defendant was an active participant in the burglary – i.e., Defendant "kicked the door" and went inside the house. Bax identified

8

Defendant's photograph in a photo lineup as a photograph of the person he saw with two other men near the house at issue on the day of the burglary, and also identified Defendant at trial as that same person. Further, the jury was fully aware of Patterson's prior inconsistent statements in which he denied that Defendant was involved in the burglary, Patterson's prior criminal convictions and Patterson's plea agreement with the State. The jury also was aware of the limited opportunity Bax had to observe the person he subsequently identified as Defendant, the process Bax used in selecting Defendant's photograph, and the fact Bax was "hesitant" in his in-court identification of Defendant because"[i]t's been a long time"

Under our standard of review, we "will not weigh the evidence anew," and we "disregard[] any evidence and inferences contrary to the verdict." *Id.* Viewed in that light, Patterson and Bax's testimony was sufficient to permit a reasonable juror to find Defendant guilty of the burglary beyond a reasonable doubt. Defendant's second point is denied.

The trial court's judgment is affirmed.


Nancy Steffen Rahmeyer, P.J. – Opinion Author

Daniel E. Scott, J. – Concurs

William W. Francis, Jr., C.J. – Concurs

9