**STATE of Missouri, Plaintiff–Respondent,**

v.

**James F. TABOR, Defendant–Appellant.**

**No. 27271.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 23, 2007.

Rehearing Denied March 15, 2007.

Application for Transfer Denied
May 1, 2007.

Craig A. Johnston, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. Nixon, Atty. Gen., and Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Appellant James F. Tabor ("Defendant"), was charged with statutory rape in the first degree for having sexual intercourse with his niece, A.M., who was less than fourteen years old, in violation of § 566.032.[1] He was found guilty by a jury and sentenced by the court to thirty years' imprisonment. Defendant now appeals, claiming the trial court erred in admitting into evidence a paternity test report because it was inadmissible hearsay and violated his right to confrontation and cross-examination guaranteed by the United States and Missouri Constitutions. Because this evidence was cumulative of other properly admitted evidence, we conclude that, even if its admission was in error, it did not prejudice the defendant. For this reason, we affirm.

## 1) *Factual Background*

Viewed in the light most favorable to the verdict, the following facts were adduced at trial.

A.M. was born on October 17, 1985, and is Defendant's niece by marriage. Growing up, she frequently visited Defendant's house to visit her cousins and often spent the night. A.M. was seven years old when she was sleeping on the couch at Defendant's house and awoke to discover Defendant's penis in her hand. On occasions thereafter, Defendant would put frosting or candy on himself and his penis and make A.M. remove it with her mouth and tongue. She was eleven years old the first time she and Defendant had sexual intercourse.

From the time A.M. was eleven until she was thirteen years old, Defendant had sexual intercourse with her twenty or more times. Most frequently, it occurred when A.M. was sleeping, and she would wake up because Defendant was having sex with her. During this time period Defendant told her, "I love you, don't tell anybody, it will break up the family, nobody will understand." A.M. was too ashamed and scared to tell her parents or anyone what Defendant was doing to her.

In May 1999, A.M. was thirteen years old, and Defendant was thirty-seven years old. During this month, Defendant had sexual intercourse with A.M., and as a result she became pregnant and had a child. Because of feelings of embarrassment and shame, A.M. did not tell the police what had happened until September 2003.

After receiving this information from A.M., Detective Ron Thomas of the Jasper County Sheriff's Department contacted Defendant at his residence. Defendant

---

1. References to statutes are to RSMo 1994, unless otherwise indicated.

denied the allegations and told Detective Thomas that "[A.M.] would have never made a report such as this to anyone." Detective Thomas asked Defendant if he was willing to submit to a paternity test, and Defendant told him that "he would take the test on his own free will and he would get back in contact with [Detective Thomas] with the results."

At Defendant's instigation, on October 8, 2003, Defendant, A.M., and A.M.'s three-year old child, T.M., went to RHS Medical Lab in Joplin for a paternity test. RHS is a private lab that functions as a "collection site," meaning the actual paternity test is not performed at that location. Instead, RHS collected DNA samples via cheek swabs from Defendant, A.M., and T.M., and sent them to a lab in Houston, Texas, where the DNA analysis was conducted. The paternity report from the Houston lab, a copy of which RHS mailed to Defendant and to A.M., showed a probability of paternity of "99.9849% as compared to an untested randomly chosen man of the American Indian population." The State was not involved in this process, as it was performed by a private lab at Defendant's request and paid for exclusively by Defendant.

After Defendant received his copy of the paternity report, he did not contact Detective Thomas as he had previously stated he would. However, after Detective Thomas received a copy of the paternity test results, presumably from A.M., he arrested Defendant, read him the Miranda [2] warnings, and took him to the police station. While being questioned at the police station, Defendant admitted that he knew T.M. was his child before he took the paternity test. Defendant also stated that he loved A.M. and admitted to having sex

with her about four times, "the last time being a month before [A.M.] became pregnant."

Defendant was tried before a jury, found guilty of statutory rape in the first degree, and sentenced to thirty years in prison. He now appeals, claiming the trial court erred in admitting the paternity report over his properly preserved objections.

### 2) *Standard of Review*

A trial court has broad discretion in deciding whether to admit or exclude evidence at trial. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). The trial court's decision will be reversed only if it has clearly abused this discretion. *Id.* An abuse of discretion occurs when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* In addition, on appeal we review for prejudice, not mere error, and will reverse only if we find prejudice. *Id.*

### 3) *Discussion*

In his sole point relied on, Defendant argues that the trial court erred in admitting the paternity report into evidence because (1) it was hearsay and did not qualify as a business record, and (2) it violated his rights to confrontation and cross-examination guaranteed by the United States and Missouri Constitutions.[3] We do not reach the merits of these contentions because, even if its admission was in error, it was cumulative of other properly admitted evidence and, as such, did not prejudice Defendant.

In matters involving the admission of evidence, we "will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State*

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** U.S. Const. amend. VI; Mo. Const. art. I, § 18(a).

*v. Hayes,* 113 S.W.3d 222, 226 (Mo.App. 2003). In general, the issue is "whether the evidence was 'outcome determinative,' that is whether 'the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all the evidence properly admitted there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.'" *State v. Driscoll,* 55 S.W.3d 350, 356 (Mo. banc 2001), *quoting State v. Barriner,* 34 S.W.3d 139, 150 (Mo. banc 2000).

█ In this case, the admission of the paternity report was not "outcome determinative" and, therefore, was not prejudicial. Paternity of the child was not an element of the offense. *See* § 566.032. The paternity report was admitted as evidence that Defendant had sexual intercourse with A.M. in May 1999, a time when she was thirteen years old, because that was also the time when T.M. was conceived. Other substantial evidence offered during the trial established the fact that Defendant had sexual intercourse with A.M. at this time. A.M. testified, without objection, that Defendant had sexual intercourse with her at this time and that she became pregnant as a result of this incident. Detective Thomas testified, without objection, that Defendant confessed that he had sexual intercourse with A.M. about four times, with "the last time being a month before [A.M.] became pregnant." Also, without objection, Detective Thomas testified that Defendant further confessed that he knew the child was his before he even took the paternity test. "Generally, prejudice does not exist when the objectionable evidence is merely cumulative of other evidence that was admitted without objection and that sufficiently establishes essentially the same facts." *State v. Smith,* 185 S.W.3d 747, 757 (Mo.App.2006) (internal citations and quotations omitted).

█ There is a different standard involved for determining prejudice when the "properly preserved error is so serious that it rises to the magnitude of a federal or state constitutional violation 'including ...confrontation clause[.]'" *State v. Berwald,* 186 S.W.3d 349, 361 n. 4 (Mo.App. 2005), *quoting State v. Wolfe,* 13 S.W.3d 248, 263 (Mo. banc 2000). In cases where the error rises to a federal or state constitutional violation, prejudice is presumed, and the judgment of guilt can only be affirmed if the State shows that the error was harmless beyond a reasonable doubt. *Neder v. U.S.,* 527 U.S. 1, 15–16, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Driscoll,* 55 S.W.3d at 356; *Berwald,* 186 S.W.3d at 361 n. 4. In order to show the error was harmless, the State must prove beyond a reasonable doubt that the error "did not contribute to the verdict obtained." *Id.* However, "[w]hen evidence challenged on constitutional grounds is cumulative of other properly-admitted evidence, the disputed evidence could not have contributed to the defendant's conviction and is harmless beyond a reasonable doubt." *State v. Lopez,* 128 S.W.3d 195, 202 (Mo.App.2004).

In the instant case, A.M.'s testimony and Defendant's admissions, both uncontroverted, overwhelmingly show that Defendant had sexual intercourse with A.M. when she was less than fourteen years old. The paternity test, being cumulative to this properly admitted evidence, could not have contributed to Defendant's conviction and is, therefore, harmless beyond a reasonable doubt. *See Brown v. U.S.,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (U.S.Ky.1973) (non-testifying co-defendant's out-of-court statement admitted in violation of defendant's right of confrontation was merely cumulative of other over-

whelming and largely uncontroverted evidence properly before the jury); *State v. Collis*, 139 S.W.3d 638 (Mo.App.2004) (applying harmless error analysis to an alleged violation of defendant's constitutional right of confrontation in admission of victim's hearsay statements).   Point denied.

### 4) *Decision*

The trial court's judgment is affirmed.

BATES, P.J., C.J., and GARRISON, J., concur.