

# Missouri Court of Appeals

## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | No. SD37997 |
| v. | ) | **Filed: August 6, 2024** |
| SHANE L. MACKEY, | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jerry A. Harmison Jr., Judge

**AFFIRMED**

Following a bench trial, Shane L. Mackey was convicted of murder in the second degree and was sentenced to life in prison. Mackey appeals from that judgment in two points. In point 1, Mackey argues the trial court abused its discretion in admitting two exhibits (Exhibits 123 and 138), both of which contained a text message from Victim to her son stating she was walking home, because that text message was inadmissible hearsay. In point 2, Mackey argues the trial court "clearly erred or plainly erred" in concluding that Mackey's expert "indicated that after all the injuries occurred, [Victim] would not have been able

to stand in the kitchen and push buttons on a coffee pot" because Mackey's expert never testified to that. Finding no merit in either argument, we affirm.

## Background

Sometime after 8:00 p.m. on November 8, 2020, Victim, who was Mackey's fiancé, was brutally beaten to death in the home she shared with Mackey. The next morning, sometime after 5:00 a.m., Mackey called 911.

The police were dispatched to the couple's home, and upon arrival, they saw Mackey performing chest compressions on Victim. Victim had no pulse. She had a cut to her forehead, her eyes were swollen, "black and purple in color," there was a dime-size hole on her face, her lip appeared busted, and she had an injury to her chin and bruises throughout her chest and shoulders. She also had blood in her hair, bruising, abrasions, scratches on her legs, and fractures to her sternum and to eight ribs. An autopsy revealed strangulation and/or impacts "to the front of the neck or impacts to the head" "had partially separated [Victim's] skull from the upper part of the spine."

Police noticed Mackey was covered in blood and had fresh injuries on him. During an interview, Mackey told police the couple had gone to a restaurant the night before and, after the meal, he discovered Victim was gone. Mackey said he decided to walk home, which took about 30 minutes, and when he got home, Victim told him she got a ride home with someone else. Mackey claimed, upon his arrival home, Victim was covered in blood, had a big gash on her head, and was standing, pressing a button on a coffee pot in the kitchen. According to Mackey, Victim would not tell him what had happened and told him not to call 911 because she did not have health insurance. It was later discovered Victim did

have health insurance and had used it several times in the months before the murder. It was also later discovered that Mackey's DNA was a major component found on Victim's hands.

The case proceeded to a bench trial. The trial court found Mackey guilty of Victim's murder and sentenced him to life imprisonment. In its judgment, the trial court expressly rejected Mackey's story to police:

> Based on the totality of the circumstances, it defies logic that Mackey would not have called 911 upon discovering his fiancé brutally beaten and the house in total disarray with blood in every room of the house. *[Victims'] text to her son supports the conclusion she walked home and did not receive a ride. Furthermore, both physicians indicated that after all the injuries occurred, [Victim] would not have been able to stand in the kitchen and push buttons on a coffee pot.* Therefore, it is unbelievable that she sustained any injury before Mackey arrived home. Additionally, considering the multiple scratches and abrasions sustained by Mackey, the fact [Victim] had defensive wounds, and the fact that Mackey's DNA was the major component on [Victim's] hands, this [c]ourt finds beyond a reasonable doubt [Mackey] repeatedly struck [Victim] during a physical altercation, causing blunt force injuries to her head and neck which resulted in her death. Therefore, [Mackey] is found guilty on Count I, murder in the second degree.

(Emphasis added). Additional facts related to Victim's text message to her son and the testimony by both medical experts are set out below.

**Point 1**

Mackey's first point argues the trial court abused its discretion in admitting two exhibits (Exhibits 123 and 138) which both contained a text message from Victim to her son stating she was walking home. According to Mackey, the text message was inadmissible hearsay.

*Additional Background*

During the bench trial, the State introduced Exhibits 123 and 138.[1]  Both of these exhibits contained the following text message sent from Victim's phone to her son at 7:06 p.m.:

> Just call me if you want.  Having to walk home from Placzek in the dark by my fucking self because she is a dick face.

Mackey objected to these exhibits on the grounds they contained hearsay.  Mackey's objections were overruled.

A similar text was also introduced as State's Exhibit 125.  This text was sent from Victim's phone to Mackey at 6:58 p.m., and read:

> Well you're not coming out and I've waited for 1520 [sic] minutes so I'm putting your keys under your mat and I guess you can get home.  I'm walking.  Thanks a lot.

Mackey did not object to the admission of Exhibit 125.

In its judgment, the trial court stated that "[Victim's] text to her son supports the conclusion she walked home and did not receive a ride."

*Standard of Review*

"'A trial court has broad discretion to admit or exclude evidence' and only errs when there is a 'clear abuse of this discretion.'"  ***State v. Coaston***, 609 S.W.3d 527, 528 (Mo. App. S.D. 2020) (quoting ***State v. Wood***, 580 S.W.3d 566, 574 (Mo. banc 2019)).  An abuse of discretion occurs when "its decision is 'clearly against the logic of the circumstances then before the court and is so

---

[1] Exhibit 123 is a screen shot of the text message.  Exhibit 138 is a "Cellebrite" report generated after police searched Victim's phone, which contained numerous messages, including the text message in Exhibit 123.  "Cellebrite" is a cellphone extraction technology used by law enforcement to extract and organize cellphone data.

unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *State v. Jackson-Bey*, 690 S.W.3d 181, 184 (Mo. banc 2024) (quoting *State v. Carpenter*, 605 S.W.3d 355, 359 (Mo. banc 2020)).

"In a bench trial, error in admitting evidence is generally not prejudicial, unless the trial court relies on the inadmissible evidence in making its findings." *State v. Dixon*, 586 S.W.3d 304, 317 (Mo. App. W.D. 2019) (quoting *State v. Hein*, 553 S.W.3d 893, 898 (Mo. App. E.D. 2018)). "Unless the record clearly reveals that the trial judge considered and relied upon inadmissible evidence, we presume the trial judge was not prejudiced by such evidence and was not influenced by it in reaching his judgment." *State v. Franklin*, 307 S.W.3d 205, 208 (Mo. App. S.D. 2010). Here, the trial court expressly noted Victim's text to her son supported the conclusion that Victim walked home rather than got a ride home from someone, as was claimed by Mackey. Because the trial court expressly relied on that text message in its findings, the presumption that the trial court was not prejudiced by the evidence does not apply.

Nevertheless, to be entitled to reversal, Mackey must also show the error was so prejudicial that it deprived him of a fair trial. *See State v. Tabor*, 219 S.W.3d 769, 772 (Mo. App. S.D. 2007). An error is prejudicial if it "so influenced the [fact finder] that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the [fact finder] would have reached a different conclusion without the error." *State v. Norman*, 618 S.W.3d 570, 575 (Mo. App. W.D. 2020) (quoting *Dixon*, 586 S.W.3d at 316-17). Mackey cannot meet this standard.

5

*Analysis*

Even assuming without deciding the text message contained in Exhibits 123 and 138 was inadmissible hearsay, Mackey's claim fails for two reasons. First, Mackey does not demonstrate he was prejudiced by the admission of the text message since other evidence established the same fact—that Victim sent a text message stating she was walking home from the restaurant. "It is well settled that there is no prejudice and no reversible error, even if evidence is improperly admitted, if other evidence establishes the same fact or facts." ***State v. Bunch***, 289 S.W.3d 701, 706 (Mo. App. S.D. 2009). Here, Exhibit 125 established the same facts as Exhibits 123 and 138—that Victim left the restaurant on foot and walked home. While the other text was sent to her son, the message in Exhibit 125 was sent to Mackey, and Mackey did not object to Exhibit 125 at trial nor does he complain about it in this appeal.

Second, even if the trial court were to have erroneously admitted evidence, reversal is not required where there is overwhelming evidence of guilt and the erroneously admitted statement is insignificant by comparison. *See **State v. Irwin***, 592 S.W.3d 96, 112 (Mo. App. E.D. 2019). Here, the evidence of Mackey's guilt was overwhelming. Mackey was covered in Victim's blood and his DNA was found on Victim's hands. Mackey had fresh injuries on his body, suggesting Victim tried to defend herself. Mackey, according to his own story, found Victim at home covered in blood but waited over eight hours before calling 911. In comparison to this evidence, the evidence Mackey complains of—a text message sent from Victim to her son that she was walking home—was insignificant. This

6

is especially true given that other evidence established the same fact. There is no reasonable probability the text message sent from Victim to her son, when balanced against the overwhelming evidence of Mackey's guilt, influenced the trial court's decision to such an extent that it would have reached a different conclusion had that text message not been admitted. Point 1 is denied.

## Point 2

In point 2, Mackey argues the trial court "clearly erred or plainly erred" in concluding Mackey's expert, a board-certified forensic pathologist, "indicated that after all the injuries occurred, [Victim] would not have been able to stand in the kitchen and push buttons on a coffee pot[.]"[2] According to Mackey, his expert never testified to that. Mackey's argument, once again, fails for at least two reasons.

### *Additional Background*

Both the State and Mackey presented evidence by medical experts about Victim's injuries and cause of death. The State called the medical examiner who performed the autopsy on Victim and Mackey called a forensic pathologist. Both experts agreed Victim died by blunt force trauma at the hands of another.[3] They disagreed, however, on how quickly Victim would have become incapacitated. The State's expert opined Victim would have been incapable of walking and talking after sustaining the injuries to her head and neck. Mackey's expert

---

[2] We need not decide which standard of review applies because Mackey's argument fails either way.

[3] Mackey's expert complimented the State's expert's autopsy and examination and noted that he "would probably follow the procedure very much like his."

opined Victim's incapacitation "could have been over a period of time and slowly[.]" According to Mackey's expert, the "epidural hemorrhage itself didn't form instantly at that time the neck was injured" and it is "possible" that Victim did not experience incapacitation when she sustained the neck and head injuries.[4] Because he could not be certain on the order of Victim's injuries, Mackey's expert believed it was probable Victim remained mobile after many of the injuries. Nevertheless, Mackey's expert agreed after *all* the injuries were sustained, Victim would not have been standing or walking.

*Analysis*

First, Mackey is wrong that his expert never testified that Victim would not have been able to stand in the kitchen and push buttons on a coffee pot after *all* the injuries occurred. This exchange occurred on cross-examination:

Q.    After -- Doctor, after those injuries occurred --

A.    Sorry.

Q.    -- you would agree that she would be unable to stand and press buttons on a coffee pot?

A.    After all these injuries occurred, yes, sir, I do not feel she was -- I do not see that she would have been able to stand and push the coffee pot as far as -- by the end -- when there was blood around the spinal cord, the accumulated blood inside her cranial vault, and then what I believe is the most probable explanation, the CPR causing the rib and sternal fractures -- the anterior rib and sternal fractures -- after that, no, she would not be able to stand and push a coffee pot.

Since Mackey's expert testified that after all the injuries occurred, Victim would not be able to stand and push a button on a coffee pot, there is no error,

_____

[4] Mackey's expert also stated Victim's rib fractures could have been explained by the chest compressions of resuscitation efforts.

8

plain or otherwise, in the trial court's finding of fact that Mackey's expert "indicated that after *all* the injuries occurred, [Victim] would not have been able to stand in the kitchen and push buttons on a coffee pot[.]" The finding *is* consistent with the expert's testimony.

Second, the trial court was free to credit all, part, or none of the expert's testimony. *See **State v. Geist***, 556 S.W.3d 117, 121 (Mo. App. S.D. 2018) ("The credibility of the witnesses and the weight to be given to their testimony is to be determined by the trial court, which is free to believe none, part or all of the testimony of any witness."). The trial court chose to credit the portion of the testimony where Mackey's expert agreed that after *all* injuries were sustained, Victim would not have been able to stand and press a button on a coffee pot. It was not required to credit the portion where Mackey's expert disagreed about how quickly incapacitation would have occurred. And, regardless of whether Victim was incapacitated by the head and neck injuries or after she sustained all of the injuries, the trial court was not required to believe—and did not believe— Mackey's story that Victim was assaulted before he arrived home. Mackey fails to demonstrate error, plain or otherwise. Point 2 is denied.

## Conclusion

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS


9